## Mundis et al. v. Southeastern Joint School District et al.

*Markowitz & Liverant*, for plaintiffs.
*W. Burg Anstine*, for defendants.

SHERWOOD, P. J., December 30, 1949.—The pleadings in this case consist of plaintiffs' bill, defendants' answer, petition to intervene, testimony taken in connection therewith and argument after request for findings of fact and conclusions of law.

Defendants, Southeastern Joint School District and the school boards of Cross Roads Borough, Delta Borough, East Hopewell Township, Fawn Township, Fawn Grove Borough, Hopewell Township, Peach Bottom Township and Stewartstown Borough, have condemned, by eminent domain proceedings, plaintiffs' land and home in Hopewell Township, York County. These proceedings have been instituted by plaintiffs to restrain such taking.

Two basic questions are presented for the consideration of the court:

(1) Is the Southeastern Joint School District such an entity as has the power to take plaintiffs' property by eminent domain?

(2) Is the taking of plaintiffs' home an arbitrary and capricious act and an abuse of discretion?

### Findings of Fact

1. Plaintiffs, James E. Mundis and Carrie P. Mundis, are husband and wife, and are residents of Hopewell Township, Stewartstown, R. F. D. No. 2, York County, Pa.

2. Defendant, Southeastern Joint School District, is a duly authorized and constituted body consolidated and functioning as a joint school district under the provisions of the Acts of Assembly of the Commonwealth of Pennsylvania.

3. Defendants, the school districts of Cross Roads Borough, Delta Borough, East Hopewell Township, Fawn Township, Fawn Grove Borough, Hopewell Township, Peach Bottom Township, and Stewartstown Borough, are the individual school districts comprising defendant, Southeastern Joint School District.

4. On March 24, 1948, the directors of the Southeastern Joint School District met at Fawn Township Vocational School for the purpose of selecting a site for the erection of an elementary consolidated school in the Stewartstown-Hopewell Township area, at which meeting 38 members were present, all of whom voted for the selection of a certain tract of land owned by plaintiffs for such school purposes.

5. On August 18, 1948, the directors of the Southeastern Joint School District adopted a resolution by a vote of 38 to 0 (two members refrained from voting) to acquire title by condemnation of the following lands of the plaintiffs, said lands being located in Hopewell Township, York County, Pa., as follows:

"All that certain messuage or tenement and tract of land situate in the Township of Hopewell in York County, Pennsylvania, bounded and described as follows, to wit:

"Beginning at a stone at land of Vermont Yost; thence along the same north seventy-six and one-half degrees west, forty-five and two-tenths perches to a stone; thence by land of Charles Shanberger south ten degrees west, fifty perches to a stone; thence by land of same south sixty-two and one-half degrees east, thirty-six and four-tenths perches to a stone; thence by same north seventy-four degrees east, seventeen and one-tenth perches to a stone; thence by land of Walton Hess north four and one-half degrees east, fifty-one and six-tenths perches to the place of beginning. Containing sixteen acres and fifty-nine perches of land, neat measure."

6. Before the adoption of the resolution to acquire the said land by condemnation proceedings was adopted, the said Southeastern Joint School District offered plaintiffs the sum of $12,500 for said tract, which offer plaintiffs refused.

7. The tract of land owned by plaintiffs was purchased by them in 1947 for the sum of $8,000, plaintiffs having prior to condemnation improved said property at their own expense.

8. Plaintiffs' bill contains no allegation nor does the testimony establish any irregularity in the proceedings leading up to the condemnation of plaintiffs' land. Therefore, the presumption of regularity obtains as to all proceedings leading up to and including condemnation.

9. The school proposed to be erected on said tract by the said school district is an elementary school for grades one to six, pupils having a range of age approximately 6 years to 12 years, and said school to be used primarily for pupils living in Stewartstown Borough, Hopewell Township, Cross Roads Borough and East Hopewell Township.

10. Approximately 260 pupils, 116 from Stewartstown Borough, 158 from Hopewell Township, and 86 from East Hopewell Township, will attend said school.

11. The land of plaintiffs sought to be condemned is located approximately three-tenths of a mile north of the Borough of Stewartstown, York County, Pa., on Pennsylvania Highway Route No. 74, sometimes referred to as Route No. 24.

12. The said tract of land is improved with a frame dwelling house and storage shed in which plaintiff, James E. Mundis, has operated a restaurant and taproom.

13. There is a tract of land located east of the Borough of Stewartstown containing approximately 16 acres of land which lies adjacent to the land known as the Athletic Field, which said tract is owned by the Stewartstown Agricultural Association of York County, 95 percent of the stock of which is owned by the Stewartstown Presbyterian Church.

14. There are two other tracts of land containing approximately 15 acres located in the vicinity of the

Borough of Stewartstown, one of which lies west of the Mundis tract and is owned by J. Vernon Yost; the other lies east of the Borough of Stewartstown across the road from the Athletic Field tract, the owner of which was not shown.

15. The Mundis tract as selected for defendants' school district is owned by individuals and is not exempt by law from condemnation by a school district.

16. The Mundis tract is the more desirable tract for school purposes because of its geographical location in that it is well related to the community to be served and is accessible to the pupils who are to attend such school.

17. The Mundis tract is the more desirable tract because of its size and shape, its width being three to five ratio to length, and the same having a level grade with sufficient elevation to prevent drainage from other lands onto it, and, at the same time, to provide a commanding view of the surrounding territory.

18. The Mundis tract is the more desirable site for school purposes because the environment surrounding it is safe and healthful, is free from disturbing noises, is free from obnoxious odors, and has surroundings that are pleasing to the eye and conducive to pride, happiness and contentment of the people occupying it.

19. The Mundis tract used for school purposes would provide no greater traffic hazards than any of the other tracts suggested by plaintiffs.

20. The distance of the Mundis tract from the Borough of Stewartstown is substantially the same as the Athletic Field tract from said borough.

21. The Mundis tract is more desirable for school purposes because of its physical features, it having a suitable contour of land and growth which will provide a natural park without a great expenditure of money.

22. The Mundis tract is desirable for school purposes because the soil of such tract is well suited to

vegetation and will provide facilities for agricultural training in a school program.

23. The Mundis tract is the most desirable tract from an architectural and engineering standpoint because it will provide for more beautiful architecture, the drainage is excellent, and the cost of grading less than any other tract suggested by the plaintiffs.

24. The quantity of land condemned is not excessive.

### *Discussion*

On or about July 16, 1948, the school districts of Cross Roads Borough, Delta Borough, East Hopewell Township, Fawn Township, Fawn Grove Borough, Hopewell Township, Peach Bottom Township, and Stewartstown Borough entered into a written agreement to form a joint school district in accordance with the provisions of section 1803 of the School Code of May 18, 1911, P. L. 309, 24 PS §1612. Thereafter, the newly formed school district met regularly to plan the construction and equipment of new buildings for the use of all the school districts who were parties to the agreement.

At a meeting held on or about August 10, 1948, the directors of the school districts comprising the newly formed joint school district selected a tract of land owned by James E. Mundis and Carrie P. Mundis, his wife, located in Hopewell Township, York County, Pa., consisting of approximately 16 acres, for school purposes.

After the meeting of all the school districts, efforts were made to reach an agreement with the owners of such real estate for its purchase. The owners were offered $12,500 for the land, but this offer was refused.

Thereafter, on or about August 18, 1948, the Southeastern Joint School District adopted a resolution to acquire the lands of the said James E. Mundis and Carrie P. Mundis, his wife, located in Hopewell Township, York County, Pa., for school purposes. The reso-

lution was adopted unanimously by 38 members of the joint school district, two of the members present electing not to vote.

On or about March 21, 1949, a petition was presented to the court praying for the appointment of viewers. The court appointed James J. Logan, William F. Fry and John C. Hoffman as viewers. After an appointed hearing, the viewers filed a report on August 22, 1949, awarding to the plaintiffs the sum of $13,000 for the land so condemned.

On March 22, 1949, the owners filed their bill in equity seeking to enjoin the joint school board and the several school districts from condemning their land, and seeking further a decree invalidating any claim of title or possession to said land by any of the school districts.

The power to form joint school districts is set forth in sections 1801, 1802, 1805 and 1807 of the School Code of May 18, 1911, P. L. 309, as amended by Act of April 11, 1929, P. L. 497. The power vested in such school board is contained in section 1802 of the act, which provides as follows:

"The several boards of school directors, establishing and maintaining such joint schools or departments, are hereby authorized to meet jointly, and exercise the same power and authority over the same as the several boards exercise over the schools in their respective districts. The title to any real estate, acquired for the purpose of establishing any such joint school or department, shall be held in the name of one or more of the districts establishing the same, as they may agree."

The power to acquire property by condemnation proceedings is vested in such board by sections 602 and 605 of the School Code of May 18, 1911, P. L. 309, as amended by the Acts of 1919, 1921 and 1925. The pertinent provisions of these acts are as follows:

"The board of school directors of any district is hereby vested with the necessary power and authority to acquire in the name of the district by purchase, lease, gift, devise, agreement, condemnation, or otherwise for school or playground purposes any school building or other real estate situated in another school district and to erect thereon school buildings and to sell, convey, transfer, or abandon the same or any part thereof subject to the provisions of this act. Any such buildings or other real estate used for school or playground purposes acquired in any other district by any such district shall be exempt from taxation for any purpose whatever; and in any case where a board of school directors of any school district of the second, third, or fourth class has acquired in the name of the district prior to the passage of this act by purchase, lease, gift, devise, agreement, condemnation, or otherwise for school or playground purposes any building or real estate situated or lying in another school district and have or have not erected buildings thereon, such acquisition of buildings or lands or such erection of buildings is hereby declared to be valid and shall be held to be valid to all intents and purposes provided in this act." (1911, May 18, P. L. 309, art. VI, sec. 602; 1919, May 27, P. L. 298, sec. 1; May 20, 1921, P. L. 970, sec. 1; 1925, April 27, P. L. 348, sec. 1.)

"Whenever the board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that said board has selected for school purposes, such board of school directors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land as it may have selected for school purposes, and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this act." (1911, May 18, P. L. 309, art. VI, sec. 605.)

There have been no appellate court cases passing directly upon the power of a joint school board to condemn land. This question was raised in a lower court case, Hardy v. Marple-Newtown Joint High School District, 31 Del. Co. 112, in which the lower court held that a joint school district does have power to condemn land. The court points out that the specific power granted by the legislature to joint school boards in section 1801 of the act in the following language:

"The boards of school directors in any two or more school districts may establish, construct, equip, furnish, and maintain joint elementary public schools, high schools, or any other kind of schools or departments provided for in this act. The cost of establishing, constructing, equipping, furnishing, and maintaining such joint schools or departments shall be paid by the several districts establishing the same, in such manner and in such proportion as they may agree upon. The action of the several boards establishing and maintaining such joint schools or departments shall be recorded in full in the minutes of the respective boards" (1911, May 18, P. L. 309, art. XVIII, 1801; 1929, April 11, P. L. 497), implies the power to do all things necessary to accomplish the objects of the main power given. To construe the act to mean that a joint school board is limited in the acquisition of land for school purposes to purchase alone would lead to a ridiculous conclusion in which land owners could demand exorbitant prices and thus defeat the power of joint school boards to establish joint schools.

While it must be admitted that statutes giving the right of eminent domain must be strictly construed, at the same time the courts of Pennsylvania have held that such powers may be implied. In Erie R. R. Co. v. Public Service Commission, 271 Pa. 409, the Public Service Commission attempted to condemn certain lands in an order eliminating a railroad grade crossing.

The pertinent provision of the Act of Assembly was section 12 of article V of The Public Service Company law of July 26, 1913, P. L. 1374, which provided as follows:

"The commission shall also have exclusive power, upon its own motion or upon complaint, and after hearing as hereinafter provided (of which all the parties in interest, including the owners of adjacent property, shall have due notice), to order any crossing aforesaid, now existing or hereafter constructed at grade, or at the same or different levels, to be relocated, or altered, or to be abolished, according to plans and specifications to be approved, and upon just and reasonable terms and conditions to be prescribed by the commission."

The act said nothing about condemnation of land for such purposes. In passing upon whether the commission had power to condemn land, the court held that such right arose from necessary implication. Justice Walling, speaking for the court, said:

"The commission's right to exercise the power of eminent domain arises from necessary implication: 20 Corpus Juris 533. The rule is well stated by this court in Linton vs. Sharpsburg Bridge Co., 1 Grant 414, that, 'Where the law authorizes a road to be made, it authorizes the taking of the land needed for the purpose, though it should not expressly say so. And just as certainly, if not so plainly, where it authorizes the erection of a bridge, it authorizes the taking of the land for its abutments, when compensation is also provided for, even though it be contained in no express terms. The necessary incidents of an authority expressly granted need not be themselves expressed'."

This announcement by the court is a statement of a long established rule that a grant of power to accomplish any particular enterprise, especially one of a public nature, carries with it the authority to do all

that is necessary to accomplish the principal object. See 63 L. R. A. 309.

In Schmidt et ux. v. Allegheny County et al., 303 Pa. 560, the County Commissioners of Allegheny County appropriated a portion of the natural bed of a stream in connection with the widening and straightening of a county road. The Act of Assembly granting power to the commissioners to alter the road was the Act of May 2, 1929, P. L. 1278. It authorized the county to "straighten, widen, extend and alter any such road or part thereof". Section 917 of the same act authorized the commissioners to "enter upon private or public property, and may take, injure and destroy the same, in the manner and subject to the restrictions and procedure prescribed by article VII of this act". The act said nothing about condemning land removed from the project. This power was held to exist by implication. The court held that the county commissioners had power to divert the stream in the following language:

"We think a necessary implication arises from the express grant of the power, that private property may be appropriated for such a purpose. As we recently declared in Valmont Developing Co. vs. Rosser, 297 Pa. 140, 149, 'municipalities plan for the future and, unless specifically limited, are bound only by factors of reasonableness'. Though the empowering statutes do not expressly authorize the diversion of a water course in this manner, 'the necessary incidents of an authority expressly granted need not be themselves expressed': Linton v. Sharpsburg Bridge Co., 1 Grant 414, 415; Cleveland & Pittsburgh R. R. Co. v. Speer, 56 Pa. 325."

No general rule can be laid down as to when the right to condemn will be implied or inferred, or when not. Such implication will more readily be made in favor of public corporations exercising power solely for the public use and benefit, than in favor of private

individuals or corporations organized for pecuniary profit. See Lewis' Eminent Domain, vol. 1, p. 570.

It is also interesting to note here that the School Code makes adequate provision for compensation to the owner of land condemned. Sections 609 and 610 of the Act of May 18, 1911, P. L. 309, provide for the appointment of a jury of viewers who shall determine the damages and benefits arising from such taking. In such cases it is presumed that the legislature intended that the power of eminent domain can be exercised where a general power to construct, equip, furnish and maintain schools was given.

It is too plain for argument that a school district cannot be restrained from taking land because of a claim that other sites in the area might be more suitable or desirable. The power to select school sites is vested by the legislature in the school districts, and their judgment in the matter will not be disturbed unless there is a well-founded abuse of discretion: Lamb v. Redding, 234 Pa. 481; Hibbs et al. v. Arensberg et al., 276 Pa. 24, 26; Day et al. v. Amwell Township School District, 283 Pa. 248.

We conclude that joint school districts have the right to condemn private property under the School Code and plaintiffs' bill must be dismissed, unless the action of the joint school district was arbitrary and capricious, constituting an abuse of discretion.

As pointed out above, the right to select school sites is vested by law in the board of school directors, whose discretion in such matters will not be disturbed by the courts unless there has been an abuse of discretion. In Day v. Amwell Township School District, supra, the Supreme Court of Pennsylvania in a per curiam opinion said:

"The school board having the right under the School Code of 1911, P. L. 309 (section 1801) to unite with adjacent school districts in establishing joint high

schools, the presumption, when such action is taken, is in favor of a proper exercise of discretion, and, as we said in Lamb vs. Redding, 234 Pa. 481, 'The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited, and they are permitted to interfere only when it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice'. And in the very late case of Hibbs et al. vs. Arensberg et al., 276 Pa. 24-26: 'Executive officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after investigation'."

In the instant case, the personnel of the defendant school districts comprise a group of outstanding farmers, bankers and businessmen from Southern York County. The testimony discloses that they made serious study and investigation before they selected plaintiffs' property for school purposes. When they voted on the matter the result was unanimous, although on one occasion only 38 of the 40 members comprising the joint school boards voted, two of the members signifying a desire not to vote. In addition, these directors secured the services of Dr. Clarence Ackley, now employed by the Pennsylvania Economy League, to assist them in their task. Dr. Ackley had had a long experience with school affairs. He served for a time as the principal of a large high school; he was employed for a period of years by the Pennsylvania Department of Public Instruction, serving for a time as Secretary of Public Instruction. Recently he has been employed by the Pennsylvania Economy League in a capacity wherein he assists school districts throughout Pennsyl-

vania in the selection of school sites and the construction of school plants thereon.

At the request of the school directors, Dr. Ackley made a survey of the Hopewell Township-Stewartstown area for the purpose of ascertaining the proper site for the erection of an elementary school building. The survey included inspection and study of the various sites suggested by the plaintiffs as more desirable for school purposes. This study included a "spot-check" of all pupils in the area so as to ascertain travel distances and centers of population. A similar check was made for all pupils of pre-school age. This investigation disclosed that approximately 360 pupils, 116 from Stewartstown Borough, 158 from Hopewell Township, and 86 from East Hopewell Township will attend the school. After full consideration of travel distances, facilities for transportation and centers of population, Dr. Ackley concluded that the Mundis tract as selected by the defendant school directors best served the need.

The survey revealed that the Mundis tract was most desirable because of its geographical location in that it is well related to the communities to be served and is readily accessible to all pupils who are to attend the school to be constructed on it. In addition, it was discovered that present building operations in the Stewartstown area are moving in the direction of the Mundis tract, thus making it suitable as a site for the future school populations.

Furthermore, the Mundis tract was found to be more desirable because of its size and shape. The tract has dimensions so that the width is three to five in ratio to length, a size usually found desirable for school buildings. The tract has a level grade and is sufficiently elevated so as to prevent drainage from other lands onto it. At the same time, it is located as to provide a commanding view of the surrounding country.

The Mundis tract was found to be desirable because the environment surrounding it is safe and healthful, free from disturbing noises, and free from obnoxious odors. The natural surroundings are pleasing to the eye and conducive to the pride, happiness and contentment of the people occupying it.

At the trial, efforts were made to show that the Mundis tract would create a traffic hazard because some pupils attending it would have to cross highways or walk along a busily traveled highway in going to and from school. This contention has little merit when it is realized that almost all of our schools are of necessity so located as to be readily accessible to vehicular traffic. School areas are now protected by special traffic regulations. In addition, police are often employed to safeguard children in such areas. In the opinion of Dr. Ackley, the Mundis tract would not present so great a traffic hazard for school children as the various sites suggested by the plaintiffs where it was pointed out that a narrow road would pass the site, making it dangerous for school buses which would have to travel it. Moreover, the grade of the latter road limits visibility and, as such, makes it dangerous to children walking on or near it.

It has not been denied that the Mundis tract contains all the requirements to provide a well rounded school program, including such activities as softball, basketball, baseball, track and field events, outdoor theatre, music shell and other activities of a similar nature. It is argued that a smaller tract will suffice because it is not the function of a school board to provide so many varied activities. In the recent case of Regan et al. v. Stoddard et al., 361 Pa. 469, the Supreme Court reiterated its policy of not interfering with school programs unless there is abuse of discretion, in the following language:

"But this court has definitely stated that it will not question the policies of school authorities so long as the

board is acting within the scope of its statutory authority and in good faith. . . .

"The court below then pertinently said: 'We must reiterate that a court is not a super Board of directors with superior knowledge of the administration of business, finance, or the science of pedagogics. It would be presumptuous to superimpose judicial control upon the exercise of discretion by trained educators. . . .' "

Further investigation reveals that the Mundis tract is desirable because of its physical features. It has contour well adapted to a school site and natural growth which will provide a natural park without great expenditure of money. A study of the soil of the tract disclosed that it is well suited to vegetation and would provide facilities for agricultural training in a school program; and because of its natural drainage the cost of grading will be less than that of any of the sites suggested by plaintiffs.

Not only was the site in question selected by defendant school directors. It was inspected and studied by Harvey G. Swartz, Superintendent of Schools of York County, and heartily approved and endorsed by him. Jacob K. Bowman, adviser to the Pennsylvania Department of Public Instruction, inspected the site, and concluded:

"I haven't seen a site that appealed to me more than this site right here, because of the location along the main road, the elevation and the drainage and the showplace you could make of a building after built there."

No other conclusion can be reached than that defendant school directors acted in a careful, prudent and conscientious manner in this selection of a school site. Plaintiffs have shown little or nothing to overcome the heavy burden of proving that the selection was made in a spirit of bad faith or in an arbitrary or capricious manner.

628

*Conclusions of Law*

1. Plaintiffs are the owners in fee of the following tract of real estate located in Hopewell Township, York County, Pa., being more fully bounded, limited and described as follows:

"All that certain messuage or tenement and tract of land situate in the Township of Hopewell, in York County, Pennsylvania, bounded and described as follows, to wit:

"Beginning at a stone at land of Vernon Yost; thence along the same north seventy-six and one-half degrees west, forty-five and two-tenths perches to a stone; thence by land of Charles Shanberger south ten degrees west, fifty perches to a stone; thence by land of same south sixty-two and one-half degrees east, thirty-six and four-tenths perches to a stone, thence by same north seventy-four degrees east, seventeen and one-tenth perches to a stone; thence by land of Walton Hess north four and one-half degrees east, fifty-one and six-tenths perches to the place of beginning. Containing sixteen acres and fifty-nine perches of land, neat measure."

2. Defendant, Southeastern Joint School District, is a duly authorized and constituted body having been organized under the provisions of the Act of May 18, 1911, P. L. 309, art. 18, secs. 1801 and 1803, as amended by the Act of April 11, 1929, P. L. 497, sec. 8.

3. Defendants, the school districts of Cross Roads Borough, Delta Borough, Fawn Grove Borough, Stewartstown Borough, East Hopewell Township, Fawn Township, Hopewell Township and Peach Bottom Township, are legally constituted school districts organized under the various Acts of Assembly of the Commonwealth of Pennsylvania.

4. The defendants have power to condemn the real estate of plaintiffs under the provisions of the Act of May 18, 1911, P. L. 309, sec. 605.

5. The land owned by plaintiffs is available by law for school purposes and is not exempt from condemnation by reason of the provisions of the Act of May 18, 1911, P. L. 309, sec. 608.

6. The quantity of land condemned, taking into consideration the objects to be obtained, is not excessive.

7. Defendants did not act in a capricious or arbitrary manner in the selection of the plaintiffs' land for school purposes, and, consequently, are not guilty of abuse of discretion.

8. Discretion for the selection of land for school purposes is vested by law in defendants.

9. Plaintiffs are not entitled to equitable relief, and plaintiffs' bill in equity must be dismissed.

And now, to wit, December 30, 1949, it is ordered, adjudged and decreed that plaintiffs' bill is dismissed and this decree is hereby entered as a decree nisi to become the decree absolute, unless exceptions are filed thereto within 20 days from the date of the filing of this decree nisi.